IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENTON W TYLMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No.: **3:12-cv-00863-DRH-PMF** |
| ) | |
| WENDY ROAL, ) | |
| ) | |
| Respondent. ) | |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is petitioner Kenton W. Tylman's petition for a writ of habeas corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2241. Respondent Wendy Roal has filed a response[1] (Doc. 8) to the writ, and the petitioner has filed a reply (Doc. 10) to that response. For the following reasons, it is recommended that the petitioner's writ of habeas corpus (Doc. 1) be dismissed with prejudice.

### I.   BACKGROUND

The petitioner, Kenton W. Tylman, is presently incarcerated at the United States Penitentiary in Marion, Illinois ("USP Marion"), a correctional institution under the authority of the U.S. Bureau of Prisons ("BOP"). On April 29, 2009, Tylman was sentenced by U.S. District Judge Mihm (Central District of Illinois) to 60 months imprisonment, three years of supervised release, and ordered to pay restitution in the amount of $259,161 for convictions of conspiracy to defraud and agency of the United States (18 U.S.C. § 371) and aiding in the filing of a false tax

---

[1] Respondent has conceded that jurisdiction is present, and that she is the appropriate respondent to the petition. *See* Doc. 8 at 1.

return (26 U.S.C. § 7206(2)). *See* Doc. 8-1 at 3. He has a projected release date of November 12, 2013 and is presently eligible for home detention on May 15, 2013. *See id*.

On June 5, 2012, Tylman sent a letter to his case manager seeking placement of 12 months in community confinement prior to his ultimate release from the BOP. *See* Doc. 1-1 at 13. In support of his request, Tylman attached a memorandum detailing the reasons he believed such placement was appropriate. *See id*. at 14-17. Tylman cited federal law as authority for his request. *See id*. Under Title 18, United States Code, Section 3624, Subsection (c), ("the Second Chance Act") the BOP is mandated "to the extent practicable" to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c). A community correctional facility (i.e. halfway house) is one example of such a condition. *See id*.

On June 18, 2012, Tylman began to attempt to exhaust his administrative remedies regarding his requested 12 month placement in a halfway house. *See* Doc. 1-1 at 1. He first attempted to informally resolve the issue with counselor on June 18. *See id*. His counselor responded to the informal request on June 22 by stating the following:

> Based upon an analysis by your Unit Team, your pre-release RRC need can be accommodated by your placement of six months or less. The unit team will recommend a placement range of 1-180 days. This is sufficient time to address your pre-release needs.

*Id*. Tylman was also given a BP-9 form at that time so that he could file a formal request for an administrative remedy if the counselor's request was not satisfactory to him. *See id*.

Tylman filed his formal BP-9 request for administrative remedy on June 28, 2012. *See* Doc. 8-2 at 3. However, the BP-9 request was rejected by the USP Marion Warden a day later and returned to Tylman for technical reason related to the format that Tylman submitted his BP-9

request to the Warden. *See id*. at 1 (stating that Tylman's BP-9 was rejected because "[he] may only submit one continuation page, equiv. of one letter-size (8.5 X 11) paper. Text on one side. The text must be legibile."). Tylman was clearly instructed that he must re-submit his BP-9 form within 10 days of the notice (i.e. by July 9, 2012). *See id*. Tylman did not re-submit his BP-9 form or attempt to proceed to any higher level of administrative adjudication regarding his 12 month placement in a halfway house pursuant to the Second Chance Act. *See* Doc. 8-4 at 4.

On August 1, 2012, Tylman filed the instant writ of habeas corpus (Doc. 1) requesting relief concerning the execution of his sentence pursuant to 28 U.S.C. § 2241. The Court reviewed the petition on August 29, 2012, ordered a response, and referred the petition to the undersigned for a report and recommendation. *See* Doc. 3.

## II. DISCUSSION

Tylman argues that the BOP's decision regarding the length of his placement in a halfway house pursuant to the Second Chance Act was arbitrary and capricious. Tylman was granted 6 months placement. He believes that 12 months of halfway house placement is appropriate in his case. The plain language of the Second Chance Act places the length on placement within the discretion of the BOP, and 12 months is the maximum permitted by the statute. *See* 18 U.S.C. § 3624(c); *see also, e.g., Rieser v. Sherrod,* Case No. 10-541, 3 (S.D.Ill., Jan 5, 2011) ("The statute also makes placement in a community correctional facility permissive, not mandatory. Petitioner has no absolute right to placement in "conditions that will facilitate his reentry into society" for longer than the 6 months determined by the Director of the Bureau of Prisons."). The BOP's decision is "entitled to deference so long as it is not arbitrary, lacking any rational basis, or otherwise contrary to the requirements of the statute" *Feazell v. Sherrod*, Case

No. 10-901, 2010 WL 5174355, 3 (S.D.Ill., 2010) (citing *Pence v. Holinka*, Case No. 09-489, 2009 WL 3241874, 3 (W.D.Wis., 2009)).

In response, respondent Wendy Roal urges the Court to dismiss the petition with prejudice because Tylman did not exhaust his administrative remedies. "A prisoner bringing a 28 U.S.C. § 2241 habeas corpus petition challenging the execution of his sentence must exhaust his administrative remedies before the District Court can consider the merits the petition." *Stokes v. Hollingsworth*, 2011 WL 6977331, 2 (S.D.Ill., December 19, 2011), *Report and Recommendation Adopted by* 2012 WL 78403 (S.D.Ill. Jan 10, 2012), (citing *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir.2004)). "The common law rule requiring exhaustion of administrative remedies accomplishes two important policy objectives: 1) exhaustion protects the authority of the administrative agency by giving it an 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures,' and 2) 'exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.' " *Id*. (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

In her brief, Roal outlined the 4 steps for which Tylman was required to comply in order to fully exhaust his administrative remedies as follows:

> The BOP maintains an Administrative Remedy Program, which is the "process through which inmates may seek formal review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Under this program, the inmate is encouraged to first attempt an informal resolution using a BP-8 form. 28 C.F.R. § 542.13. If that fails, the prisoner files his initial grievance on a BP-9 form. 28 C.F.R. § 542.14. If dissatisfied with the disposition of the grievance, the inmate may appeal to the Regional Director using a BP-10 form. 28 C.F.R. § 542.15. If still dissatisfied, further appeal to the Central Office is perfected using a BP-11 form. 28 C.F.R. § 542.15. Appeal to the Central Office is the final level of

> administrative appeal. *Id*. Thus, exhaustion of administrative remedies requires the filing of a BP-11.

Doc. 8 at 4-5.  The Court agrees that a petitioner seeking habeas relief under 28 U.S.C. § 2241 must first complete all 4 steps of the administrative remedy process (BP-8 through BP-11) prior to filing his petition, unless certain extenuating circumstances warranting an exception to the common law rule are applicable.  To hold otherwise would undermine the BOP's ability to resolve issues at the institutional level before federal litigation becomes necessary.  It would effectively allow inmates to bypass the administrative remedy process by disregarding it, thereby defeating the policy objectives of requiring exhaustion of administrative remedies in the first place.

Tylman has filed a reply brief (Doc. 10) addressing Roal's administrative remedy argument.  He does not disagree with the Roal's assertion that he failed to proceed past the second step of the administrative remedy process.  Rather, he urges the Court to apply the futility exception to the common law rule requiring exhaustion of administrative remedies.  Under the futility exception, the exhaustion requirement may be excused if "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir.2002)).  According to Tylman, exhaustion would have been futile because "those 'up-the-ladder', with higher authority than the Unit Manger, [had] already predetermined the issue presented." Doc. 10 at 2.  Accordingly, Tylman believes invoking the administrative remedy process through the all 4 steps would have caused unreasonable delay. *See id*.  He also believes that the BOP departments higher up the chain in the administrative remedy process "lack the ability to resolve Petitioner's [halfway house] placement requested." *Id*.

The Court disagrees. Tylman's failure to exhaust his administrative remedies with regard to the issue at hand is not excusable. Tylman completed the first step of the administrative remedy process but failed to complete steps 2-4. He could have easily resubmitted his rejected BP-9 form for reconsideration on June 29, 2012. Tylman instead decided to proceed to filing a petition for writ of habeas corpus. The Court cannot accept Tylman's unsubstantiated claim that exhaustion would have been futile. The fact is that Tylman has no idea what would have happened with regard to his request at the higher levels of administrative review because he never attempted to exercise those options. If the Court will to allow Tylman to proceed to the merits of his case based on the circumstances presented here, than it would be setting an unwelcome precedent of allowing any petitioner to skirt the exhaustion requirement by merely stating that he or she has an unsubstantiated, subjective belief that exercising his administrative remedies would have been futile. As outlined above, disregarding the exhaustion question would effectively nullify the BOP's ability to resolve issues at the administrative level. This is a precedent that this Court is not willing to set. Accordingly, the petition should be dismissed.

The undersigned does not reach the merits of the petition. However, it should be noted that the BOP has highlighted in its memorandum that the actual length of Tylman's placement in a halfway house is yet to be determined. Perhaps if Tylman would have utilized the proper channels on the administrative level prior to filing this petition, his request for more than six months placement would have been reconsidered by now and resolved favorably to him.

### III. CONCLUSION AND RECOMMENDATION

The materials submitted demonstrate that the petitioner is not being held in custody in violation of the Constitution or federal law. He is not entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2241. It is recommended that the petitioner's writ of habeas corpus (Doc. 1) be dismissed with prejudice.

**SO RECOMMENDED.**

**DATED: December 13, 2012.**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**